# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. _____

*In re:* Application Pursuant to
28 U.S.C. § 1782 of

**FARHAD AZIMA**
5921 Ward Parkway
Kansas City, Missouri 64113

                *Petitioner*,

v.

**GLOBAL IMPACT SERVICES**
3010 N Military Trail, Suite 318
Boca Raton, Florida, 33431,

**EITAN ARUSY**
3010 N Military Trail, Suite 318
Boca Raton, Florida, 33431,

         and

**TRUIST FINANCIAL CORPORATION**
214 N Tryon Street
Charlotte, NC 28202,

                *Respondents.*

# MEMORANDUM OF LAW IN SUPPORT OF PETITIONER'S APPLICATION FOR AN ORDER TO TAKE DISCOVERY PURSUANT TO 28 U.S.C. § 1782

130451285.1

## TABLE OF CONTENTS

| | | | |
|---|---|---|---|
| I. | INTRODUCTION | | 3 |
| II. | BACKGROUND | | 5 |
| | A. | Summary of the UK Proceedings | 5 |
| | B. | Petitioner's Amended Counterclaim | 6 |
| | C. | New Information Related to Eitan Arusy and Global Impact Services | 9 |
| | D. | The Discovery Requested | 10 |
| III. | ARGUMENT | | 10 |
| | A. | Petitioner's Application Satisfies All of the Statutory Requirements of 28 U.S.C. § 1782 | 11 |
| | B. | The *Intel* Discretionary Factors Also Weigh in Favor of Granting Petitioner's Application | 13 |
| | | 1. Respondents are Not Participants in the UK Proceedings | 13 |
| | | 2. The UK Court is Receptive to Section 1782 Discovery | 14 |
| | | 3. Petitioner Is Not Concealing an Attempt to Circumvent Any UK Court Proof-Gathering Restrictions | 15 |
| | | 4. The Discovery Petitinoer Seeks is Relevant and Narrowly Tailored | 16 |
| IV. | CONCLUSION | | 17 |

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Clerici*,
    481 F.3d 1324 (11th Cir. 2007) ...................................................................................................11

*In re England/Bahamas*,
    No. 20-MC-61696, 2021 WL 3270074 (S.D. Fla. July 30, 2021 ............................9, 11, 12, 14

*Intel Corp. v. Advanced Micro Devices, Inc.*,
    542 U.S. 241 (2004).............................................................................................................. *passim*

*In re Kivisto*,
    521 F. App'x 886 (11th Cir. 2013) ..............................................................................................13

*In re Novoship (UK) Limited*,
    No. 20-60876, 2020 WL 3286308 (S.D. Fla. June 18, 2020) ..................................................11

*Victoria, LLC v. Likhtenfeld*,
    791 F. App'x 810, 816 (11th Cir. 2019) .................................................................................9, 11

**Statutes**

28 U.S.C. § 1782............................................................................................................. *passim*

28 U.S.C. § 1782(a) ....................................................................................................8, 9, 10, 12

**Other Authorities**

*BellTrox works on same hacking contracts as ancestor Appin*, Intelligence Online,
    Issue 859, (August 26, 2020), https://www.intelligenceonline.com/corporate-
    intelligence/2020/08/26/belltrox-works-on-same-hacking-contracts-as-
    ancestor-appin,109602044-art .......................................................................................................3

Raphael Satter and Christopher Bing, *Israeli charged in global hack-for-hire
    scheme wants plea deal – court filing*, Reuters (June 30, 2021).................................................3

**I.      INTRODUCTION**

Petitioner Farhad Azima, a U.S. citizen, currently has a pending case in the High Court of Justice of England and Wales (the "UK Court"), which seeks to hold a group of overseas defendants (the "UK Defendants") responsible for the unlawful hacking of Petitioner's electronic data. *See Farhad Azima -v- (1) RAKIA (2) David Neil Gerrard (3) Dechert LLP and (4) James Edward Deniston Buchanan* (Claim Number: HC-2016-002798) (the "UK Proceeding"). In support of that litigation, Petitioner filed applications in this Court earlier this year seeking documents and depositions from two Florida-based companies, Insight Analysis and Research LLC ("Insight") and SDC-Gadot LLC ("Gadot").[1] Recently, Petitioner took Rule 30(b)(6) depositions of Insight and Gadot, through their named corporate representative, Amit Forlit.

During those depositions, Forlit revealed that Eitan Arusy and his Florida-based entity Global Impact Services, Inc. ("GIS") played an integral role in the investigation of Petitioner and others, as it relates to the U.K. Proceeding. Forlit's testimony, bank records, and other evidence establishes that:

- Forlit paid Arusy (through GIS) to assist with the investigation that Forlit, Page and others were conducting on behalf of the UK Defendants. As alleged in the UK Proceeding, that work included the hacking of Azima and others.

- As alleged in the UK Proceeding, the UK Defendants held regular meetings to discuss the results of hacking and to plan further hacking. Arusy was an active participant in "staff meetings" regarding the investigation. Arusy was one of the select few people involved in those meetings, along with Forlit, Page, and UK Defendants Neil Gerrard and Jamie Buchanan.

- GIS was paid $260,000 in 2017 by Insight; bank records show that these payments were made to GIS through BB&T Bank, which is now Truist Financial Corporation ("Truist").

---

[1] Separately, Petitioner sought and received bank records for Insight and Gadot through separate Section 1782 Applications, submitted in other Districts.

3

130451285.1

GIS paid Insight more than $700,000 and Gadot more than $30,000 between September 2020 and September 2021. Bank records reveal that these payments, which were also through Truist, made up the vast majority of the money received by Insight during this timeframe.

Based on such information, it is clear that Respondents have material information relevant to the unlawful hacking and subsequent cover-up of that hacking. In this application, Petitioner seeks the assistance of this Court in obtaining this information for use in the UK Proceeding. Specifically, Petitioner seeks a court order authorizing the following: (1) a Rule 30(b)(6) deposition of Global Impact Services Inc.; (2) a Rule 30(b)(1) deposition of Eitan Arusy; (3) a subpoena for documents from Global Impact Services; (4) a subpoena for documents from Arusy; and (5) a subpoena for documents from Truist.

As explained below, the application should be granted because it satisfies the statutory requirements for obtaining discovery under section 1782. In particular, (a) Petitioner seeks discovery from (i) GIS, which is a Florida formed entity located in the Southern District, (ii) Arusy, who is the owner and manager of GIS, and (iii) Truist, which holds the bank records for GIS and has several locations throughout the Southern District of Florida; (b) the discovery will be used in proceedings that are pending before a foreign tribunal, namely the UK Court; and (c) Petitioner is a party to that litigation.

In addition, the discretionary factors identified by the Supreme Court in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004), all support the granting of the requested discovery: (i) the Respondents to this Application are not parties to the case before the UK Court; (ii) the UK Court is receptive to discovery obtained pursuant to Section 1782; (iii) Petitioner's Application is not an attempt to circumvent the UK Court's proof-gathering requirements; and (iv) the discovery that Petitioner seeks is highly relevant to the matters in dispute in the underlying litigation and is narrowly tailored to avoid imposing undue burden or intrusion on the respondent.

For these reasons, which are set forth more fully below, Petitioner respectfully submits that his application for discovery pursuant to Section 1782 should be granted.

## II. BACKGROUND

This application relates to a similar matter pending in the Southern District of Florida (*see Azima v. Insight, et al.*, Case No. 22-mc-20707-JEM/Becerra). That case is active, and the court granted, in relevant part, Petitioner's initial application for discovery. The facts of this application significantly overlap with that case. Indeed, the background facts and procedural history of this pleading mirror that filed in the application for discovery in that case (*see id.* at D.E. 1-2).

### A. Summary of the UK Proceedings

The UK Proceeding commenced in 2016, when the Ras Al Khaimah Investment Authority ("RAKIA")[2] sued Petitioner in a civil action in the UK Court over a business dispute. RAKIA's claim against Petitioner was based on information that was obtained by the illegal hacking of Petitioner's computers and e-mail accounts.[3] Petitioner's counterclaim alleged RAKIA and its agents were responsible for the hacking. After an initial trial, the UK Court entered a judgment for RAKIA and dismissed Petitioner's counterclaim. However, the dismissal of Petitioner's hacking claim was reversed on appeal, and the claim was remanded for a new trial in which Petitioner was permitted to develop and submit new evidence.

Following the remand, Petitioner amended his Counterclaim to add additional defendants, namely RAKIA's outside counsel Dechert LLP, Dechert partner Neil Gerrard, RAKIA executive

---

[2] RAKIA is the investment authority of the Ras Al Khaimah ("RAK"), which is one of the seven Emirates that together constitute the United Arab Emirates.

[3] RAKIA's initial position in the UK Proceeding was that its agents came across the material obtained from the hacking innocently on the internet.

5

130451285.1

Jaime Buchanan, and Stuart Page, a private investigator.[4] Holden Decl. ¶ 12. The Amended Counterclaim also added more detailed allegations as to how the defendants and others conspired to hack Petitioner's computers and electronic data. *See* Holden Decl. ¶ 12, Ex. A ¶¶ 101-11 (summarizing the case against RAKIA and each of the additional defendants).

Recently, the Amended Counterclaim was amended further to allege a widespread scheme by the UK Defendants to present false testimony to the UK court in the first trial to cover up their illicit methods of obtaining Petitioner's data. *See* Holden Decl. ¶ 9, Ex. A. Those amendments were based largely upon an affidavit from Stuart Page, who served as a RAKIA witness in the first trial but recently provided an affidavit to the UK Supreme Court exposing the extent of the fraud perpetrated on the UK Court in the first trial.

**B.     Petitioner's Amended Counterclaim**

As alleged in the Amended Counterclaim and detailed in Mr. Page's affidavit, RAKIA worked with Mr. Page, who in turn instructed Israeli hacker, Amit Forlit, to investigate Petitioner and others. Holden Decl. ¶ 10. Forlit works for Respondents, Insight and Gadot, both of which are Florida-based and both of which use signal intelligence techniques such as hacking to gather information, and is the authorized member for Gadot. *See* Holden Decl. ¶¶ 10-11, Ex. B. Forlit also has connections with other known hackers. Forlit is reportedly "close to" Aviram Azari, who is currently in custody in New York facing criminal charges related to hacking.[5]

---

[4] Mr. Page has since settled with Petitioner.

[5] *See* "*BellTrox works on same hacking contracts as ancestor Appin*," Intelligence Online, Issue 859, published on August 26, 2020, available at https://www.intelligenceonline.com/corporate-intelligence/2020/08/26/belltrox-works-on-same-hacking-contracts-as-ancestor-appin,109602044-art (last viewed on August 5, 2022); Raphael Satter and Christopher Bing, "*Israeli charged in global hack-for-hire scheme wants plea deal – court filing*," Reuters, published on June 30, 2021, available at https://www.reuters.com/technology/israeli-charged-global-hacker-for-hire-scheme-wants-plea-deal-court-filing-2021-06-30/ (last viewed on August 5, 2022).

Mr. Page paid Forlit for his work through the US bank accounts of Respondents Insight and Gadot. *See* Holden Decl. ¶ 10(a), Ex. C (invoices from Respondents, Insight and Gadot to Mr. Page seeking payment through accounts with Bank of America, JP Morgan Chase, and Citibank). The invoices for payment were sent using the Respondents' Florida addresses.[6]

Mr. Page's affidavit indicates that starting in at least February 2015, Forlit and Respondents were paid to prepare a series of reports for the UK Defendants about the investigation subjects, which included Petitioner. *See* Holden Decl., Ex. D ¶¶ 9-10. At least some of the reports contained extracts from hacked communications, and it would have been clear to anyone reading the reports that the extracts were the result of hacking. *See* Holden Decl. ¶ 15; Ex. D ¶ 16.

A subsequent witness statement submitted by Mr. Page in separate proceedings demonstrates that Forlit's hacking continued well into 2020. Holden Decl. ¶ 22, Ex. E. According to that witness statement, during Petitioner's first trial in early 2020, Mr. Handjani and Mr. Gerrard met with Mr. Page on multiple occasions, including at the Royal Automobile Club in London, to instruct Mr. Page to investigate the funding of Petitioner's and other's litigation related to RAKIA and Dechert LLP. *Id*. Mr. Page instructed Forlit to conduct the investigation and provided Forlit's report, which included hacked documents, to Mr. Handjani. Mr. Page also met with Mr. Gerrard at a service station in mid-2020 to show him a copy of the report. *Id*.

In addition to describing the role that Forlit played in the investigation of Petitioner, which included hacking, Mr. Page's affidavit also confirms that the UK Defendants, along with Forlit, engaged in an elaborate conspiracy to submit perjured testimony in the UK proceedings. *See* Holden Decl. at Ex. D, Ex. F.

---

[6] Before Respondents were incorporated in Florida, the entities conducted operations out of Israel, including with respect to the investigation of Petitioner. *See* Holden Decl. ¶ 12.

7

130451285.1

To summarize, RAKIA's defense at the first trial was that they had obtained Petitioner's hacked data when an Israeli journalist, Majdi Halabi, found links to the hacked data on the internet. *See* Holden Decl. ¶¶ 23-26. Multiple RAKIA witnesses, including its lawyer, Neil Gerrard, testified to this story. However, in his January 2022 affidavit, Mr. Page stated that this story was false because, Mr. Page states, links to the stolen data were provided to Mr. Page by Forlit.

The UK defendants concocted the false story of innocent discovery to avoid telling the UK court the true story of how they came into possession of Petitioner's stolen data. *See* Holden Decl. ¶¶ 24-25. In a series of meetings in 2018 and 2019, Forlit joined Mr. Gerrard, Mr. Hughes, Mr. Buchanan, Mr. Page, and Mr. Halabi, along with others, at meetings in Cyprus, Switzerland, and England, to develop and rehearse the false story. Forlit attended these meetings, and because he was working and being paid for his services by the Respondents, they should have relevant documents about the scheme to defraud the UK Court.

A separate witness statement filed by Paul Robinson in a different proceeding shows additional document destruction extending through at least June 2020. *See* Holden Decl. at Ex. G. Mr. Robinson explained that he had undertaken various engagements for Nicholas Del Rosso, including gathering information about Petitioner. Mr. Robinson received his instructions from Patrick Grayson and understood those instructions to be on behalf of Mr. Del Rosso. In June 2020, Mr. Grayson directed Mr. Robinson to destroy and sanitize any material that could connect Mr. Grayson or Mr. Del Rosso to the investigation of Petitioner carried out by Mr. Robinson. *See* Holden Decl. ¶ 27-28, Ex. G. These instructions for investigators working for RAKIA to sanitize and destroy documents relevant to these proceedings occurred at or around the same time as Mr. Page's meetings with Mr. Handjani and Mr. Gerrard to pedal one of Forlit's reports containing hacked documents. It is likely that similar instructions were provided to Forlit as well.

C.     **New Information Related to Eitan Arusy and Global Impact Services**

Bank records confirm Mr. Page's statements and show that Mr. Page paid Forlit more than $10 million (USD) between 2017 and 2021. Those same bank records show that Forlit, through Insight and Gadot, paid $260,000 to GIS in 2017 and received more than $730,000 from GIS from September 2020 to September 2021. In the account opening documents for Gadot, Forlit listed "Global Impact" as one of his three largest customers, along with Mr. Page's entity. Forlit's testimony also established that around the same time he was making payments to GIS, Forlit was also making payments to Aviram Azari through Azari's entity "Aviram Hawk Consulting". Mr. Azari has recently pled guilty to hacking, and at his plea colloquy described using an Israeli company to engage in such hacking efforts.

Based on the testimony of Forlit, it is clear that Arusy played an integral role in the investigation that Mr. Page and Forlit referred to as "Project Beech," focused, in part, on Petitioner, and that Forlit paid GIS for Arusy's work on the project. At the Rule 30(b)(6) depositions of Insight and Gadot, Forlit revealed that Arusy was part of the inner circle of people who, along with UK Defendants Mr. Gerrard and Mr. Buchanan, Mr. Page, and Forlit, attended regular "staff meetings" to discuss the investigation, which included the hacking of Petitioner. Forlit estimated that Arusy met with UK Defendant Gerrard about the investigation into Petitioner and his associates approximately five to ten times. Based on Forlit's testimony, which is corroborated by the bank records showing substantial payments between Forlit's entities and Arusy's entities, it appears that Arusy played a critical role in the investigation, targeting, and hacking of Petitioner and others. For these reasons, there is a basis to seek discovery from Arusy, GIS, and Truist.

### D. The Discovery Requested

Draft subpoenas detailing the documents and communications sought by Petitioner are attached as Exhibit H to the Holden Declaration. In summary, with regard to GIS and Arusy, Petitioner seeks two narrow and discrete categories of documents. First, Petitioner seeks documents and communications related to Petitioner and his associates, who were the subject of the investigation. Second, Petitioner seeks documents and communications related to those who are alleged to be integral members of the conspiracy. With regard to Truist, Petitioner simply seeks documents and communications related to the account through which GIS made and received payments from Forlit's entities, Insight and Gadot.

With regard to depositions, Petitioner seeks a Rule 30(b)(1) deposition from Arusy and a Rule 30(b)(6) deposition of a company representative of GIS with knowledge of the investigation into Petitioner and his associates, the subsequent cover-up, and interactions with the UK Defendants and their conspirators, along the lines of the document subpoenas.

### III. ARGUMENT

This Court has the authority to grant Petitioner's application pursuant to 28 U.S.C. Section 1782 for assistance in obtaining evidence for use in connection with the UK Proceedings. Section 1782 provides in pertinent part that "[t]he district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal." 28 U.S.C. § 1782(a). As shown below, Petitioner's application meets the statutory requirements for obtaining discovery under Section 1782. Petitioner is an "interested person" for purposes of Section 1782. Petitioner seeks evidence, through deposition testimony and documents. That evidence is sought for use in

connection with a proceeding pending before a foreign tribunal (the UK Court). Respondents reside in or are found in the Southern District of Florida.

In addition, the four discretionary factors that have been identified by the United States Supreme Court in *Intel Corp.*, 542 U.S. at 249, all weigh in favor of granting Petitioner's request. Respondents are not parties to the UK Proceedings; the UK Court is not opposed to this form of discovery; Petitioner is not concealing an attempt to circumvent the requirements of the UK Court; and the discovery sought is both highly relevant to the matters in dispute and narrowly tailored to avoid imposing any undue burden or intrusion on the Respondents.

### A. Petitioner's Application Satisfies All of the Statutory Requirements of 28 U.S.C. § 1782

Section 1782 authorizes federal district courts to assist foreign litigants and other interested parties in gathering evidence for use in a proceeding before a foreign or international tribunal. *See Intel Corp.*, 542 U.S. at 247. The statute provides that:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court . . . . To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

28 U.S.C. § 1782(a). The Eleventh Circuit has held that the requirements of Section 1782 are met when the following are shown: "(1) the request must be made 'by a foreign or international tribunal,' or by 'any interested person'; (2) the request must seek evidence, whether it be the 'testimony or statement' of a person or the production of 'a document or other thing'; (3) the

evidence must be 'for use in a proceeding in a foreign or international tribunal'; and (4) the person from whom discovery is sought must reside or be found in the district of the district court ruling on the application for assistance." *Victoria, LLC v. Likhtenfeld*, 791 F. App'x 810, 816 (11th Cir. 2019) (cited by *In re England/Bahamas*, No. 20-MC-61696, 2021 WL 3270074, at *2 (S.D. Fla. July 30, 2021)). Petitioner's application satisfies all four requirements.

*First*, Petitioner is an "interested person" in the underlying foreign or international proceeding. Litigants in a case being adjudicated before a foreign tribunal are "interested persons" for purposes of Section 1782. The Supreme Court has held that "[n]o doubt litigants are included among, and may be the most common example of, the 'interested person[s]' who may invoke § 1782." *Intel Corp.*, 542 U.S. at 256. Accordingly, Petitioner is an "interested person" within the meaning of Section 1782.

*Second*, Petitioner seeks to obtain documents and/or testimony from Respondents. The nature of his requests clearly meet the second statutory requirement that the request be for "evidence."

*Third*, the discovery is sought for use in connection with a proceeding before a foreign or international tribunal. The discovery sought in this case will be used for the proceedings before the High Court of Justice of England and Wales. The UK Court is clearly a foreign tribunal within the meaning of Section 1782. *See Intel Corp.*, 542 U.S. at 257-58.

*Fourth*, the Respondents from which discovery is sought reside in or are found the district where the application is made. According to its annual report filed on March 11, 2022, Respondent GIS has a principal place of business at 3010 N Military Trail, Suite 318, Boca Raton, Florida, 33431. GIS also has a registered agent, Glen Golish, who is located at that same address. Arusy is the owner and founder of the company and signed both the articles of incorporation and each of

the annual reports that are filed with the state of Florida. Finally, Truist has dozens of branches in the Southern District of Florida, including at least seven in Boca Raton, where GIS is located. Given that the company was created in Boca Raton with a principal place of business in Boca Raton, it is likely that the bank branch where the company's accounts were set up was located in Boca Raton.

In sum, Petitioner's application satisfies all four statutory requirements and should be granted. As discussed *infra*, the discretionary factors identified by the Supreme Court in *Intel Corp.* also weigh in favor of granting Petitioner's application.

### B. The *Intel* Discretionary Factors Also Weigh in Favor of Granting Petitioner's Application

The Supreme Court in *Intel* has identified four discretionary factors that guide district courts in considering the grant of a Section 1782 discovery application: (1) whether the respondent is a participant in the international tribunal proceedings, (2) whether the foreign tribunal is resistant to section 1782 discovery, (3) whether the petitioner is concealing an attempt to circumvent tribunal proof-gathering restrictions, and (4) whether the requested discovery is relevant and narrowly tailored. Each of the discretionary factors weigh in favor of granting Petitioner's Section 1782 discovery application.

#### 1. Respondents are Not Participants in the UK Proceedings

First, *Intel* held that district courts should consider whether "the person from whom discovery is sought is a participant in the foreign proceeding." *Id.* at 264. This is because "the need for § 1782(a) aid [against a participant] generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad." *Id*.

None of the Respondents are participants in the UK Proceedings. *See* Holden Decl. ¶ 4, Ex. A. Thus, the evidence held by Respondents is outside the jurisdictional reach of the UK Court.

13

Indeed, Section 1782 was enacted specifically to assist parties in litigation facing this type of situation. "A foreign tribunal has jurisdiction over those appearing before it. . . .In contrast, nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; thus, their evidence, available in the United States, may be unobtainable absent [Section] 1782(a) aid." *Intel Corp.*, 542 U.S. at 244. For that reason, the fact that the person from which discovery is sought is a "nonparticipant" in the foreign or international proceedings typically weighs in favor of granting the requested discovery. *Id.* at 264.

### 2. The UK Court is Receptive to Section 1782 Discovery

Second, *Intel* held that a district court should consider the "receptivity" of the foreign or international tribunal in question to "U.S. federal-court judicial assistance." *Intel Corp.,* 542 U.S. at 264. This does not require the district court to engage in an extensive analysis of whether a foreign or international tribunal would be receptive to discovery assistance. Rather, the inquiry requires courts to "contemplate[] the climate of the foreign court and proceedings to ascertain how receptive it will be to the sought discovery." *Victoria LLC*, 791 F. App'x at 817. In so doing, courts consider "the nature of the foreign tribunal" and "the character of the proceedings." *In re Clerici*, 481 F.3d 1324, 1335 (11th Cir. 2007). After conducting this analysis, the Southern District of Florida has granted applications pursuant to Section 1782 for matters pending in the UK. *See In re England/Bahamas*, 2021 WL 3270074, at *2; *In re Novoship (UK) Limited*, No. 20-60876, 2020 WL 3286308, at *3 (S.D. Fla. June 18, 2020).

The nature and character of the UK Proceeding is such that the court will be receptive to foreign discovery. The documents, materials, and information sought from Respondents concern potential evidence that supports Petitioner's claims of misconduct perpetrated by the UK Defendants. Given their relevance to the proceedings, Petitioner has good reason to believe that

the requested documents and deposition testimony could, and would, be considered by the UK court. There is no reason to think that the discovery sought would be inadmissible or otherwise rejected by the UK court.

### 3. Petitioner Is Not Concealing an Attempt to Circumvent Any UK Court Proof-Gathering Restrictions

Third, *Intel* held that a district court should consider "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 265. This factor is intended to protect against an applicant's misuse of the process by verifying that it is not attempting to avoid proof-gathering restrictions that are imposed in the underlying proceeding. However, the law is clear that, absent bad faith on the part of the applicant, a court will not weigh this factor against allowing discovery. Courts will not withhold discovery if nothing in the record suggest that the application conceals an attempt to circumvent foreign proof-gathering. Courts have held that the fact that the request information would not be discoverable in the foreign proceeding is insufficient to demonstrate that a Section 1782 application is an attempt to circumvent restrictions. *See In re England/Bahamas*, 2021 WL 3270074, at *6 (holding that there is no attempt to circumvent UK proof gathering restrictions when the court "is unaware of any authority to support the conclusion that either jurisdiction would prohibit parties from obtaining and using deposition testimony obtained elsewhere").

Petitioner's application does not seek to avoid any proof-gathering requirements of the UK Court and is a good-faith attempt to seek discovery that would assist him in presenting his case at the UK Court, namely by obtaining additional evidence regarding the hacking perpetrated by the UK Defendants and subsequent cover-up. The fact that the UK Court has no jurisdiction over Respondents makes it necessary for Petitioner to pursue discovery from Respondents through this

15

130451285.1

court. Petitioner is pursuing this discovery at the first available opportunity because in the first trial, RAKIA did not disclose Respondents' involvement in the investigation of Petitioner or in the scheme to defraud the UK Court. *See* Holden Decl. ¶¶ 5-7. This information was only recently revealed during the Rule 30(b)(6) depositions of Insight and Gadot.

### 4. The Discovery Petitioner Seeks is Relevant and Narrowly Tailored

Lastly, *Intel* held that a district court should consider whether "unduly intrusive or burdensome requests may be rejected or trimmed." *Intel Corp.*, 542 U.S. at 265. In reviewing this factor, courts look to whether the request is sufficiently tailored to the litigation issues for which production is sought. The Eleventh Circuit instructs district courts to examine whether an application contains "unduly intrusive or burdensome requests," is "made in bad faith or for the purpose of harassment," or is part of a "fishing expedition." *In re Kivisto*, 521 F. App'x 886, 888 (11th Cir. 2013).

Here, Petitioner's request is narrowly tailored and not unduly burdensome or intrusive. Petitioner has confined his document request solely to two categories: (1) documents and communications related to Petitioner and his associates, who were the subject of the investigation, and (2) documents and communications related to those who are alleged to be integral members of the conspiracy. This limited discovery is not overly broad or unduly burdensome. It is targeted directly at the issues of the UK Proceeding, which relate to the hacking of Petitioner and the subsequent fraud on the UK court regarding that hacking.[7] Similarly, the depositions requested are narrowly tailored to target relevant materials identified.

---

[7] If Respondents have any legitimate concerns regarding confidentiality and or the scope of any documents requested, Petitioner is willing to discuss a protective order to facilitate the production of the requested discovery. *See In re England/Bahamas*, 2021 WL 3270074, at *7.

16

130451285.1

In sum, Petitioner's Section 1782 application satisfies both the relevant statutory requirements and the discretionary factors that have been identified by the Supreme Court in *Intel*. Petitioner's application accordingly should be granted.

## IV.     CONCLUSION

For the foregoing reasons, Petitioner respectfully requests that this Court grant his Section 1782 discovery application and enter the accompanying proposed order directing Respondents to produce the documents requested and appear for depositions.

Respectfully submitted,

Dated: August 8, 2022

*s/ Vanessa Singh Johannes*
Michael S. Pasano (FBN 475947)
Email: MPasano@carltonfields.com
Vanessa Singh Johannes (FBN 1028744)
E-mail: VJohannes@carltonfields.com
CARLTON FIELDS P.A.
700 N.W. 1st Avenue, Suite 1200
Miami, Florida 33136-4118
Telephone: (305) 530-0050


*/s/ Kirby D. Behre*
Kirby D. Behre (*pro hac vice* to be filed)
MILLER & CHEVALIER CHARTERED
900 16th Street, NW
Washington, D.C. 20006
Telephone: (202) 626-5800
Fax: (202) 626-5801
Email: kbehre@milchev.com

*Counsel for Petitioner*